UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNITY CREDIT COUNSELING CORP., : : Plaintiff, : : v. : : NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, : : Defendant. : | Civil Action No. 08-2132 (JAP) **OPINION** |

Plaintiff Community Credit Counseling Corporation ("CCC") brings this action against defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or "Defendant") seeking coverage under a "Not-For-Profit Individual and Organization Insurance Policy" (the "Policy"). Presently before the Court is a motion by Defendant to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendant's motion is denied.

**I.  BACKGROUND** [1]

Plaintiff is a tax-exempt non-profit corporation that provides credit counseling services. Compl. ¶3. On or about June 8, 2007, Defendant issued to CCC a Not-For-Profit Individual and Organization Insurance Policy, Policy No. 741-90-29. This liability policy

---

[1] In addressing a motion to dismiss under Rule 12(b)(6), the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. County of Allegeheny*, 515 F.3d 224, 228 (3d Cir. 2008). Accordingly, the facts recited below are taken from Plaintiff's amended complaint unless otherwise indicated and do not represent this Court's factual findings.

covered the the period June 8, 2007, to June 8, 2008, and had limits in the aggregate amount of $1,000,000.  *Id.* ¶ 8.  CCC at all times complied with the terms of this policy and paid all premiums due.

On or about September 26, 2007, a purported consumer class action lawsuit, *Caruso v. Community Counseling Credit Corporation*, Civil Action No. 07-4041, was initiated against CCC in the United States District Court for the Eastern District of Pennsylvania (the "*Caruso* action").  *Id.* ¶ 14.  This suit alleged, among other things, that CCC violated the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA"), and the Pennsylvania Credit Services Act, 73 P.S. § 2181 *et seq.* ("CSA"), through the use of deceptive and misleading promotional materials, advertising and business practices, and by the failure of CCC credit counselors to properly manage and pay clients accounts.  *Id.* ¶ 1.  The alleged violations of these two statutes are the sole counts in the suit.  Apparently because both of these statutes expressly exclude non-profit organizations from their scope,[2] the complaint in the Caruso action challenges CCC's non-profit status, stating that CCC "falsely held itself out to be a 501(c)(3) non-profit organization."  Certification of Matthew O'Malley ("O'Malley Cert.") Ex. 4, ¶ 8.

In accordance with the terms of the Policy, CCC promptly reported this lawsuit to Defendant, seeking coverage and defense of the suit.  Compl. ¶ 15.  By letter dated October 23, 2007, Defendant[3] "denied the claim . . . and denied a defense to [CCC]" pursuant to various exclusions in the Policy that are not at issue in the instant motion.  *Id.* ¶ 16.

---

[2]The CROA expressly excludes "any non-profit organization which is exempt from taxation under Section 501(c)(3) of Title 26.  15 U.S.C. § 1679a(3)(B)(i).  The CSA contains a similar exclusion.  73 P.S. § 2182(2)(iii).

[3]The letter was from AIG Domestic Claims, Inc., Defendant's claims agent.

Thereafter, Plaintiff filed the instant lawsuit alleging that Defendant's denials breached the Policy and that, as a result of this breach, Plaintiff has incurred damages in the form of legal costs and expenses in defending itself in the *Caruso* action. Defendant has filed this motion seeking dismissal of the complaint, alleging that because under the express terms of the policy there is no coverage for the *Caruso* action, Defendant was not required to tender a defense.

## II. ANALYSIS

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955, 1969 (2007), the Supreme Court fashioned the standard for addressing a motion to dismiss under Rule 12(b)(6). The court in *Twombly* stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotations omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 127 S. Ct. at 1965.

B. Coverage Under the Policy

As noted above, Defendant argues that the complaint in this matter should be dismissed because coverage under the Policy did not extend to the *Caruso* action and, therefore, Defendant had no obligation under the Policy to provide a defense. According to Defendant, the Not-For-Profit Protector Policy does not contemplate exposure to civil prosecution under statutes that expressly exempt not-for-profit organizations. In particular, Defendant argues the complaint in the *Caruso* action does not comport with the Policy's definition of "Loss," and, accordingly, there was no coverage and no obligation to defend CCC in the action.

It is well-settled under New Jersey law[4] that coverage under an insurance policy "is determined by the terms of the insurance contract, and interpreting the contract is a legal question for the court." *Rena, Inc. v. Brien,* 310 N.J. Super. 304, 321 (App. Div. 1998). In interpreting insurance contracts, the Court "first examines the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" *Pizzullo v. New Jersey Mfrs. Ins. Co.*, 196 N.J. 251, 270 (2008) (quoting *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001)). "[C]ourts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." *Id.* (quoting *President v. Jenkins*, 180 N.J. 550, 562 (2004)). However, if the insurance contract is ambiguous, a court should interpret the contract so as to effect the reasonable expectations of the insured. *Id.* at 270-71. Indeed,

---

[4]In diversity actions such as this, state law governs the interpretation of an insurance contract. *Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 205, 58 S.Ct. 860, 861, 82 L.Ed. 1290 (1938).

the New Jersey Supreme Court has recognized that it might be appropriate in some circumstances to permit an insured's reasonable expectation to overcome the plain meaning of a policy. *Id.* at 271.

In a dispute over insurance coverage, a plaintiff bears the initial burden of establishing that coverage exists under the policy. *See, e.g., Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996) (burden is on the insured "to bring the claim within the basic terms of the policy"). Once this burden is met, the burden then shifts to the insurer to prove that there is an exclusion to coverage that is applicable. *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 98 N.J. 18, 26 (1984). Here, Defendant argues that Plaintiff failed to "bring the claim within the basic terms of the policy." Reply at 6.

The Policy provides that it will "pay on behalf of the Organization Loss arising from a Claim . . . for any actual or alleged Wrongful Act of the Organization." Policy at 1.[5] A "Loss" means "damages, . . . judgements, settlements, pre- and post-judgment interest, . . . and Defense Costs." Policy at 3. A "Claim" is defined to include "a civil . . . proceeding for monetary or non-monetary relief which is commenced by . . . service of a complaint or similar pleading." Policy at 2. Finally, a "Wrongful Act" that is covered under the policy is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization." Policy at 5.

The Policy is clear that it is not a "duty to defend" policy. It expressly provides that the Insurer "does not assume any duty to defend," but rather, the Insured "shall defend and

---

[5]The Claim must be "first made against the Organization during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy." Policy at 1.

contest and Claim made against them." Policy at 9. However, the Insured has the right under the Policy to "to tender the defense of any Claim to the Insurer," provided the Insured exercises this right within 30 days of the Claim and, further, that the Insured does nothing to prejudice its rights or the Insurer's rights with respect to the claim. As long as these conditions are fulfilled, "the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent." Policy at 9.

There can be no dispute, at least for the purposes of this motion, that CCC tendered the defense of the *Caruso* action to Defendant and fulfilled the necessary conditions under the Policy for Defendant to assume the defense. Compl. ¶ 15-16 (Plaintiff "promptly reported the *Caruso* lawsuit to [D]efendant, in writing, fully cooperating with [D]efendant, and fully complied with all applicable terms and conditions of the Policy. ... [Defendant] denied a defense to" Plaintiff.). The issue here, as noted above, is whether the Policy provides coverage for the lawsuit. To make that determination, the Court must compare the allegations in the *Caruso* complaint to the Policy. *Powell v. Alemaz, Inc.*, 335 N.J. Super. 33, 39 (App. Div. 2000) ("To determine whether there is coverage, the complaint must be laid alongside the policy, and the inquiry is whether the allegations of the complaint, upon its face, fall within the risk insured against, notwithstanding the actual merit of the claim.")

In comparing the complaint in the *Caruso* action to the Policy, it is first clear that the complaint is the kind of "Claim" contemplated by the Policy, *i.e.*, a civil proceeding initiated by way of a complaint. Further, it is also clear that the *Caruso* complaint alleges the kind of "Wrongful Acts" covered by the plain language of the Policy. The *Caruso* complaint contends that CCC made various misrepresentations and failed to perform certain duties as

6

required under the CROA and CSA. *Caruso* Complaint at O'Malley Decl., Ex. 4. As noted earlier, the policy provides coverage for Wrongful Acts that include "any breach of duty, neglect, error, misstatement, misleading statement, omission or act," Policy at 9, and the allegations in the *Caruso* complaint fall squarely within that definition.

Nevertheless, Defendant contends that there is no coverage because the Policy's definition of a "Loss" excludes "any amount for which the Insureds are not financially liable or which are without legal recourse to the insureds." Policy at 3. According to the Defendant, the two statutes under which the *Caruso* complaint is brought "do not permit legal recourse against a non-profit § 501(c)(3) company," and, therefore, there is no coverage. Def. Brf. at 11. However, the Court agrees with Plaintiff that the exclusion relied upon by Defendant is simply not applicable in the case at bar. Indeed, under Defendant's strained construction of the exclusion, virtually any lawsuit lacking a basis in the law would be excluded from coverage under the Policy. This conflicts with the express terms of the Policy that make clear that Defendant is obligated to assume the defense of a claim tendered to it by Plaintiff even if the claim is "groundless, false, or fraudulent." Policy at 9.

Defendant further claims that CCC cannot establish any facts that the *Caruso* action will give rise to a "Loss" within the contemplation of the Policy because in order for damages to be awarded in that case, the *Caruso* plaintiffs would have to prove that CCC "falsely held itself out to be a 501(c)(3) non-profit organization." *Caruso* Complaint ¶ 8. According to Defendant, if this fact is established, then CCC "cannot have insurance coverage under a 'Not-for-Profit Protector' policy that was issued based on a false representation that CCC was a 501(c)(3) non-profit organization." Def. Brf. at 11. Indeed, an insurer may rescind a policy

when the insured makes a false statement in the insurance application that materially affects the acceptance of the insurance risk. *Booker v. Blackburn*, 942 F.Supp. 1005, 1008-09, (D.N.J. 1996) (applying New Jersey law).  Consequently, Defendant asserts that because Plaintiff cannot show that it can obtain indemnification for damages if they are awarded in the *Caruso* action, there is no insurance coverage for defense costs.

While Defendant's argument may have some facile appeal, it is flawed in that it conflates Defendant's obligations under the insurance contract with Defendant's right to seek rescission of the insurance contract if it is found that Defendant relied upon a material misrepresentation by the Plaintiff in issuing a policy.  Importantly, Defendant is not presently seeking rescission of the insurance contract.  Moreover, the New Jersey Supreme Court has recognized that rescission is "an equitable remedy, which properly depends on the totality of circumstances in a given case and resides within a court's discretion." *First American Title Ins. Co. v. Lawson*, 177 N.J. 125, 143, 827 A.2d 230 (2003). "Even where grounds for rescission exist ... the remedy is discretionary.' " *Id.* at 143-44, 827 A.2d 230 (quoting *Intertech Assocs., Inc. v. City of Paterson*, 255 N.J. Super. 52 (App. Div.1992)).

As such, a determination as to whether there is coverage in this case must be made by looking only to the terms of the insurance contract.  Defendant simply has not show that, because there is the possibility that Defendant may have grounds in the future to seek rescission of the insurance contract if the *Caruso* plaintiffs prevail, that the *Caruso* action cannot give rise to a "Loss" as defined by the Policy.  "Loss" under the Policy includes "damages . . .judgments, settlements," etc., which undisputably can arise from the *Caruso* action.  Consequently, the Court finds that Plaintiff's complaint states a claim upon which relief can be granted.

### III.  CONCLUSION

For the reasons above, Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.  An appropriate Order accompanies this Opinion.

                                                          /s/ Joel A. Pisano                              
                                                          JOEL A. PISANO, U.S.D.J.

Dated: March 30, 2009